## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

**MATTHEW RILEY, et al.**                                          **PLAINTIFFS**

**v.**                                   **CIVIL ACTION NO. 2:09-CV-148-KS-MTP**

**FORD MOTOR COMPANY, et al.**                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

The Court now considers Defendant Ford Motor Company's Motion to Strike [244] the affidavit of Steven E. Meyer attached as an exhibit to Plaintiff's response to Ford's motion to exclude Meyer's testimony. For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND

This is a wrongful death and product liability action stemming from an automobile accident on November 3, 2006. The Riley family was traveling east on Highway 98 in Marion County, Mississippi, in a 2002 Ford Explorer XLS. Plaintiff Matthew Riley was driving. Plaintiff Carmen Riley occupied the front passenger seat, while their children, Plaintiffs C.R. and A.R., sat in the back seat. All Plaintiffs were wearing seatbelts.

Another vehicle attempted to pass Plaintiffs' Explorer and made contact with it. Plaintiffs' vehicle went off the road and overturned. All Plaintiffs suffered serious injuries. Carmen Riley and A.R. were partially ejected from the vehicle. Carmen Riley suffered serious and permanent injuries, while A.R. was killed.

In their First Amended Complaint, Plaintiffs advanced a variety of claims. They alleged that the Explorer's restraint system failed as a result of design and manufacturing defects. They further

1

alleged that its door latch system failed, and that its windows were not properly glazed. They included the following causes of action: strict liability, negligence, and failure to recall and/or retrofit. Finally, they seek a variety of damages, including punitive damages; medical expenses; lost earnings; and compensation for pain, suffering, and emotional distress.

## II. DISCUSSION

Ford argues that the Court should strike the affidavit of Steven E. Meyer [231-1] attached to Plaintiffs' response to Ford's motion seeking the exclusion of Meyer's expert testimony. Ford argues that the affidavit contains four opinions which Plaintiffs failed to disclose in their expert designations or timely provide in a supplementary designation. Key Safety joined the motion. In response, Plaintiffs contend that the affidavit is consistent with Meyer's deposition and the expert report provided to Defendants.[1]

As always, the Court possess broad, substantial discretion in discovery-related matters. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996). The Court may control its docket "by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. La. Land Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997). Rule 26

---

[1]Plaintiffs also contend that it is not necessary for the Court to address Ford's motion to strike Meyer's affidavit, as the four issues raised by Ford in the motion to strike are not relevant to Ford's *Daubert* motion as to Meyer's testimony. However, Plaintiffs' plainly rely upon the affidavit in their response to Ford's *Daubert* motion and dispositive motions. "Evidence may only be introduced at the summary judgment phase of a trial if the evidence would be admissible at trial." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000); *see also* FED. R. CIV. P. 56(c)(2). If Plaintiffs wished to withdraw the affidavit from the Court's consideration, they were free to do so. They did not. Therefore, the Court must address Ford's objections if it is to consider the affidavit.

Additionally, Defendants argued in reply that Plaintiffs conceded that the Court should not consider the affidavit. Plaintiffs did no such thing. They merely argued that Meyer's report and deposition testimony were sufficient to survive Defendants' *Daubert* motion with or without the affidavit.

provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. FED. R. CIV. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case . . . ." FED. R. CIV. P. 26(a)(2)(B). The report must contain the following:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii)    the facts or data considered by the witness in forming them;
(iii)   any exhibits that will be used to summarize or support them;
(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and
(vi)    a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i)-(vi). "A party must make these disclosures at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D).[2] Local Rule 26 provides that a "party must make full and complete disclosure as required by FED. R. CIV. P. 26(a) and L.U.Civ.R. 26(a)(2)(D) no later than the time specified in the case management order." L.U.Civ.R. 26(a)(2).

Additionally, "[t]he parties must supplement these disclosures when required under Rule 26(e)." FED. R. CIV. P. 26(a)(2)(E). "[A] party is required to supplement its expert disclosures if the court so orders or if 'the party learns that in some material respect the information disclosed is

_____

[2]The Advisory Committee's Notes to Rule 26 of the Federal Rules of Civil Procedure provide that expert witnesses "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." FED. R. CIV. P. 26 advisory committee's note; *see also Sierra Club*, 73 F.3d at 571. "These Notes also explain that the purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club*, 73 F.3d at 571.

incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Sierra Club*, 73 F.3d at 57 n. 42 (quoting FED. R. CIV. P. 26(e)(1)). "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2). While Rule 26(a)(3) provides that pretrial disclosures must be made at least thirty days before trial, it adds the following caveat: "[u]nless the court orders otherwise . . . ." FED. R. CIV. P. 26(a)(3). Local Rule 26 provides that a "party is under a duty to supplement disclosures at appropriate intervals under FED. R. CIV. P. 26(e) and *in no event later than the discovery deadline* established by the case management order." L.U.Civ.R. 26(a)(5) (emphasis added).

In summary, Plaintiffs' expert designations were due by December 14, 2010. If they were going to provide a supplement to Meyer's report, it was due before March 31, 2011, the discovery deadline. *Id.* Therefore, if the evidence at issue differs materially from the opinions and information provided to Defendants in the report accompanying Plaintiffs' expert designation, it was not timely disclosed. FED. R. CIV. P. 26(a)(2), (e)(1). However, Plaintiffs did not have a duty to supplement the report if the opinions or information were otherwise made known to Defendants during the discovery process. FED. R. CIV. P. 26(e)(1).

Preliminarily, the Court notes that it will not strike the affidavit in its entirety, even if the portions of it to which Ford objects were not timely disclosed. The issue before the Court is whether the information and opinions contained within the affidavit differ materially from the information and opinions disclosed to Defendants in Meyer's report and his deposition. Ford has only

4

specifically challenged four paragraphs of the affidavit. If they are not materially different, the evidence is admissible at trial – barring other issues not raised here – and the Court may consider it when deciding dispositive motions. If they are materially different, the Court must decide whether to exclude it, in which case the Court could not consider it when deciding the parties' dispositive motions. When deciding whether to exclude expert testimony for a party's failure to disclose it, the Court considers the following factors: "(1) the explanation for the failure . . . ; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004); *see also EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993).

A.      *Meyer's Previous Testimony Regarding Belt Spoolout*

In paragraph 14 of the affidavit,[3] Meyer suggests that "belt spoolout from an unlocked retractor" contributed to "[s]lack in the shoulder belt portion of the 2nd row right restraint." Ford argues that Meyer previously testified that he could not state whether, to a reasonable degree of engineering certainty, the right belt experienced any spoolout.

Both Meyer's report and the affidavit contain the same language regarding belt spoolout. In fact, paragraph 14 of the affidavit appears to have been taken word-for-word from Meyer's expert report. Therefore, the opinion was timely disclosed. To the extent Defendants argue that Meyer contradicted his disclosed opinion during his deposition, that goes toward the weight or reliability of the opinion, matters properly addressed in a *Daubert* motion or in cross-examination at trial.

B.      *Meyer's Analysis of Other Similar Incidents*

---

[3]Plaintiffs attached the affidavit at issue [231-1], Meyer's expert report [231-3], and a transcript of Meyer's deposition [231-4] as exhibits to their response to Ford's motion to exclude Meyer's testimony.

In paragraph 17 of the affidavit, Meyer represented that his opinions are based upon "empirically tested information, or 'field data,'" including "[a]nalysis of several other similar incidences [sic] . . . described and identified in [his] report and during [his] deposition in this matter." Defendant argues that Meyer previously testified that he had not analyzed other similar incidents in preparing his opinions in this case, and that he had only just considered the issue as he traveled to the deposition. In response, Plaintiffs addressed Meyer's testimony regarding other similar incidents of the four specific ways in which the seatbelt system allegedly failed: film spool, retractor failure, mounting bracket failure, and anchor deformation.

In reply, Ford failed to specify the other similar incidents to which they objected, and Ford did not address Plaintiffs' arguments as to each area of alleged failure. Rather, Ford merely recited general law regarding the timely disclosure of expert testimony. The deposition testimony which Ford addressed in its initial brief related to other similar incidents of film spool. However, the language employed by Meyer in the affidavit can be interpreted to encompass other similar incidents related to any part of the seatbelt system. Accordingly, the Court will analyze Ford's objection to Meyer's "other similar incidents" testimony as it pertains to each of the four ways Plaintiffs allege the seatbelt system failed.

### 1.   *Film Spool*

Plaintiffs first addressed film spool which allegedly caused additional slack in the seatbelt. Although Plaintiffs' briefing is less than clear on this point, it appears that Plaintiffs contend Defendants were aware that film spool generally occurs in rollover accidents, as evidenced by their own witnesses' testimony and Meyer's testimony. However, this fails to address the primary thrust of Ford's motion – Plaintiffs' purported failure to disclose Meyer's reliance on other similar

6

incidents of film spool.

While Meyer referred to film spool during his deposition and briefly discussed it, he did not provide any specific data regarding other similar incidents. Regardless of whether the parties agree that film spool generally occurs in rollover accidents, if Plaintiffs intended to put on expert testimony supported by analysis of other specific incidents, they had an obligation to disclose the information relied upon by their expert. As it stands, Meyer only testified that, in his general experience, a certain degree of film spool was typical in rollover accidents, but he did not present any specific data.

In the affidavit, Meyer used the term "incidences," rather than the term "incidents." This juxtaposition provides an opportunity to illustrate the Court's point. An "incident" is a distinct, individual event, while "incidence" refers to the frequency of an event's occurrence. Meyer's report and deposition testimony contained no specific information regarding other similar *incidents* of film spool. However, he made general observations based on his own experience regarding the *incidence* of film spool. Accordingly, Plaintiffs provided Defendants with notice of his testimony as to the latter, but not as to the former. They have not provided any explanation to justify this failure. Therefore, Meyer may testify – as he did during his deposition – that in his general experience, film spool typically happens in rollover accidents. However, he may not refer to other specific incidents of film spool, as Plaintiffs failed to disclose such testimony.

2.     *Retractor Failure*

At deposition, Meyer testified that he was not sure whether he would testify at trial as to other similar incidents of retractor failure, but he provided Defendants with approximately twenty test reports from other cases. However, he also testified that he had not performed similar tests in

this case. Therefore, it is clear that Plaintiffs did not disclose any substantive analysis of other similar incidents of retractor failure or comparison of those incidents to the present one. Further, it is undisputed that Meyer did not conduct retractor tests similar to those conducted in the other cases.

The mere provision of test reports from other cases only constitutes a portion of what Plaintiffs were obligated to disclose if they wished to present an expert opinion comparing other similar retractor failures to the one alleged in this case. For example, Plaintiffs failed to provide any test results from this case, or Meyer's actual analysis. Plaintiffs provided no explanation for this failure. Therefore, to the extent Plaintiffs seek to introduce expert testimony in which Meyer compares retractor failure in this case to other similar incidents of retractor failure, such testimony is barred because Plaintiffs failed to timely disclose it or all the information underlying it.

        *3.*      *Mounting Bracket Failure*

Plaintiffs do not dispute that they failed to disclose Meyer's opinions regarding other similar incidents of mounting bracket failure. Rather, they claim to have been unaware that evidence of other similar incidents existed until the depositions of Defendants' corporate representatives on March 8-10, 2011. Plaintiffs requested such information as early as their initial discovery requests, which were served in late December 2009. When Ford responded to Plaintiffs' initial discovery requests in late January 2010, it produced a number of documents and videos relevant to the design and performance of the rear seating positions in side and rollover accidents. According to Plaintiffs' brief, Defendants produced a list of several hundred crash tests and over one hundred testing videos.

This collection of testing information apparently included examples of mounting bracket failure. Ford's counsel identified it as potentially responsive to Plaintiffs' queries regarding crash tests resulting in broken mounting brackets in a letter dated March 29, 2011 – two days before the

discovery deadline, and over a year after Ford's discovery responses were served. In the initial discovery responses, though, Ford failed to identify any crash test information as responsive to Plaintiffs' specific request for evidence of other similar incidents of mounting bracket failure. Plaintiffs discovered the evidence during the depositions of Ford's corporate representatives. One of the corporate representatives alluded to a crash test in which a mounting bracket experienced "separation." Plaintiffs' counsel followed up on the issue, leading to Ford's counsel's letter of March 29, 2011.

Plaintiffs' have provided a satisfactory explanation for their failure to disclose Meyer's testimony regarding other similar incidents of mounting bracket failure. Plaintiffs served a production request specifically targeting other similar incidents of mounting bracket failure, and Defendants did not identify any documents responsive to it until well after Plaintiffs' expert designation deadline, and on the eve of the discovery deadline. Meyer's opinion on this issue is pertinent to determination of whether the product in question was defective when it left Ford's control. *See* MISS. CODE ANN. § 11-1-63(a)(i). Additionally, Meyer's testimony on the issue will be relevant if Plaintiffs receive a favorable verdict as to Ford's liability and are permitted to present evidence relevant to punitive damages. *See* MISS. CODE ANN. § 11-1-65(e).

Ford has been in possession of the testing data longer than Plaintiffs have, and it is likely more prepared to discuss it than Plaintiffs are, as it conducted the tests to begin with. However, Ford has not yet been provided any substantive notice of what Plaintiffs' expert intends to say regarding the crash tests in question. Plaintiffs had the crash test evidence in their possession for almost a year before their expert designations deadline, as Ford produced it in response to a general request for production concerning testing data. However, Ford had an obligation to identify the specific data

and documents that were responsive to Plaintiffs' discovery request concerning other similar incidents of mounting bracket failure. Neither wholesale admission nor wholesale exclusion of the testimony would be equitable in this case.

Therefore, the Court will allow Meyer's testimony regarding the other similar incidents of mounting bracket failure during crash testing, but the Court will consider granting a continuance of trial if Defendants believe that they need more time to prepare. If Plaintiffs intend to present Meyer's expert testimony on the subject, they must provide Defendants with a supplementary expert report which includes Meyer's expected testimony regarding the other similar incidents of mounting bracket failure. Plaintiffs shall provide Defendants with a supplementary report **within seven days of the entry of this order**. If Defendants believe that a continuance of trial is necessary to fully prepare for Meyer's testimony on this subject, Defendants may file a motion for a continuance **within three days of their receipt of the supplemental report**, outlining why a continuance is necessary. The Court cautions the parties: this order is not a license to delay trial preparation. The Court has not decided whether it will grant any continuance, and the decision will likely be determined by the nature of Meyer's expected testimony and the amount of preparation it demands from Defendants.

4.    *Anchor Deformation*

Plaintiffs argue that Meyer generally discussed the occurrence of anchor deformation and corresponding D-ring movement during his deposition and in his report. Plaintiffs further argue that Meyer specifically discussed the manner in which another automobile manufacturer addressed these particular rollover issues. However, with regard to anchor deformation in Ford vehicles, Meyer briefly stated that certain spit tests provided a basis for his alternative designs which would reduce

10

anchor deformation. Indeed, Plaintiffs admit that Meyer's discussion of other similar incidents related primarily to retractor failure, and they did not provide any explanation for their failure to disclose his potential testimony as to other similar incidents of anchor deformation. Therefore, to the extent Plaintiffs seek to introduce expert testimony in which Meyer discusses other similar incidents of B-pillar deformation, C-pillar deformation, and D-ring movement, such testimony is barred because Plaintiffs failed to timely disclose it or all the information underlying it – with the exception of the aforementioned spit test data, which was discussed during Meyer's deposition.

C.   *Meyer's Opinions Regarding Tensile Strength of the Aluminum Rivet*

In paragraph 23 of the affidavit, Meyer addressed the performance of an aluminum rivet which secured the mounting bracket for the right rear buckle and center lap belt to the vehicle's frame. He stated that "calculations based upon published tensile strength ratings from an aluminum rivet of this size further confirm that the rivet could not reasonably be expected to be a structural attachment as it will fail in the subject configuration when loaded with less than 100 pounds." Meyer stated that this opinion was confirmed by his previous deposition testimony "that one of [his] employees was able to simply pull apart by hand the mounting bracket from the rear buckle and center rear lap belt through tensile failure of the rivet." Meyer believed that further testing regarding tensile strength was not necessary, in light of the rivet's inability to withstand application of pressure by hand. Defendants argue that Plaintiffs have never disclosed any opinions from Meyer regarding tensile strength.

Meyer clearly discussed the strength of the rivet during his deposition, pointing out that Ford's own expert testified that the rivet could not withstand the pressure exerted during a rollover accident. Further, Meyer noted that his assistant had broken the rivet by hand. Therefore, Meyer may

11

address the rivet's strength within the scope of his prior testimony. However, Plaintiffs did not disclose anything beyond Meyer's general observations of the rivet's strength or provide any explanation for their failure to do so. Therefore, Meyer may not discuss any testing, research, or analysis which was not timely disclosed to Defendants. For example, in the affidavit Meyer refers to "calculations based upon published tensile strength ratings for an aluminum rivet of this size." Meyer's report contains no such calculations, and Plaintiff failed to identify Meyer's discussion of them at deposition. Prior to the affidavit, Meyer only generally addressed the strength of the rivet, without reference to tensile strength ratings. Accordingly, such testimony is barred.

### D.       *Meyer's Discussion and Diagrams Related to Belt Geometry*

In Paragraph 26 of the affidavit, Meyer discussed geometric differences between alternative designs and the subject seatbelt buckle and bracket, and how the differences resulted in differing levels of lateral displacement of passengers. In support of this discussion, Meyer presented diagrams illustrating the geometric differences between his proposed bracket design and the one built into the Explorer. Ford argues that, prior to the affidavit at issue, Plaintiffs did not disclose any opinion regarding belt geometry or any diagrams in support of such an opinion.

During his deposition, Meyer discussed the impact that the buckle stalk's length has on lateral displacement of passengers. Therefore, Defendant's were made aware of his opinion on the issue during discovery. However, it is undisputed that Plaintiffs did not disclose the diagrams illustrating the difference in buckle stalk length prior to the affidavit, and Plaintiffs did not provide any explanation for their failure to do so. Accordingly, Plaintiff is barred from presenting the diagrams at trial, but Meyer may discuss the impact of buckle stalk length within the parameters established by his deposition testimony.

12

### III. CONCLUSION

For the reasons stated above, Ford's Motion to Strike [244] the affidavit of Steven Meyer

is granted in part and denied in part. Specifically:

- The motion is denied as to Meyer's testimony addressing belt spoolout.

- The motion is denied as to Meyer's testimony that film spool generally occurs in rollover accidents, but it is granted as to his testimony regarding other specific incidents of film spool.

- The motion is granted as to Meyer's testimony regarding other similar incidents of retractor failure.

- The motion is denied as to Meyer's testimony regarding other similar incidents of mounting bracket failure. However, within seven days of the entry of this order Plaintiffs shall provide Defendants with a supplemental expert report detailing Meyer's opinions regarding other similar incidents of mounting bracket failure. If Defendants believe that a continuance of trial is necessary to properly address the proposed expert testimony, they shall file a motion for a continuance within three days of service of Plaintiffs' supplemental report.

- The motion is granted as to Meyer's testimony regarding other similar incidents of B-pillar deformation, C-pillar deformation, and D-ring movement. However, it is denied as to Meyer's testimony regarding certain spit test data which displayed the effects of such anchor deformation.

- The motion is denied as to Meyer's general observations regarding the strength of the aluminum rivet and his assistant's application of force by hand. However, the motion is granted as to any calculations, testing, or analysis not disclosed to Defendants, including his discussion of tensile strength ratings.

- The motion is denied as to Meyer's discussion of belt geometry, but it is granted as to Meyer's belt geometry diagrams.

SO ORDERED AND ADJUDGED this 23rd day of June, 2011.s

s/Keith Starrett
UNITED STATES DISTRICT JUDGE