**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MATTHEW RILEY, et al.**                                                    **PLAINTIFFS**

**v.**                                                 **CIVIL ACTION NO. 2:09-CV-148-KS-MTP**

**FORD MOTOR COMPANY, et al.**                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion In Limine [162] as to evidence that A.R. was not in a child restraint seat or booster seat at the time of the accident. For the reasons stated below, the motion is **denied.**

**I. BACKGROUND**

This is a wrongful death and product liability action stemming from an automobile accident on November 3, 2006. The Riley family was traveling east on Highway 98 in Marion County, Mississippi, in a 2002 Ford Explorer XLS. Plaintiff Matthew Riley was driving. Plaintiff Carmen Riley occupied the front passenger seat, while their children, Plaintiffs C.R. and A.R., sat in the back seat. All Plaintiffs were wearing seat belts.

Another vehicle attempted to pass Plaintiffs' Explorer and made contact with it. Plaintiffs' vehicle went off the road, rolling over several times in the process. All Plaintiffs suffered serious injuries. Carmen Riley and A.R. were partially ejected from the vehicle. Carmen Riley suffered serious and permanent injuries, while A.R. was killed.

In their First Amended Complaint, Plaintiffs advanced a variety of claims implicating both

the Mississippi Products Liability Act ("MPLA")[1] and Mississippi's wrongful death statute.[2] They alleged that the Explorer's restraint system failed as a result of design and manufacturing defects. They further alleged that its door latch system failed, and that its windows were not properly glazed. Finally, they alleged that Defendants failed to warn of the danger caused by the alleged defects. They included the following causes of action: strict liability, negligence, and failure to recall and/or retrofit. Finally, they seek a variety of damages, including punitive damages; medical expenses; lost earnings; and compensation for pain, suffering, and emotional distress.

In an order [267] entered June 23, 2011, the Court granted in part and denied in part Ford's Motion for Partial Summary Judgment [152]. The Court granted the motion as to: the MPLA claims and emotional damages claims of Plaintiffs C.R. and Matthew Riley; Matthew Riley's lost wages claims; all Plaintiffs' warning defect claims; all Plaintiffs' claims stemming from alleged defects in the door latch system and window glazing; and all Plaintiffs' claims stemming from Defendants' alleged failure to recall or retrofit the vehicle. However, the Court denied the motion as to: Matthew Riley and C.R.'s claims for loss of companionship and society; Matthew Riley and C.R.'s claims for damages attributable to the injuries and/or death of A.R. to which they were entitled as wrongful death beneficiaries; and all Plaintiffs' negligence claims. Finally, the Court held that Plaintiffs had not properly plead any bystander liability claim, and, therefore, no such claim was before the Court.[3]

The Court also granted in part and denied in part [268] Ford's Motion to Strike [244] the affidavit of Steven Meyer attached to Plaintiffs' response [231] to Ford's Motion to Exclude [150]

---

[1] MISS. CODE ANN. § 11-1-63.

[2] MISS. CODE ANN. § 11-7-13.

[3] The Court later denied [276] Plaintiffs' motion to file a Second Amended Complaint which included a bystander liability theory.

2

Meyer's testimony. The Court denied the motion as to: Meyer's testimony addressing belt spool-out; Meyer's testimony that belt spool-out generally occurs in rollover accidents; Meyer's testimony regarding other similar incidents of mounting bracket failure; Meyer's discussion of certain spit test data which allegedly displayed the effects of anchor deformation; Meyer's general observations regarding the strength of an aluminum rivet, including his assistant's "testing" the rivet by applying force by hand; and Meyer's discussion of belt geometry. The Court granted the motion as to: Meyer's testimony regarding other specific incidents of belt spool-out; Meyer's testimony regarding other specific incidents of retractor failure; Meyer's testimony regarding other similar incidents of B-pillar deformation, C-pillar deformation, and D-ring movement; any calculations, testing, or analysis regarding the strength of any aluminum rivet that was not timely disclosed to Defendants, including Meyer's discussion of tensile strength ratings; and Meyer's belt geometry diagrams.

On July 12, 2011, the Court granted in part and denied in part Key Safety's Motion for Summary Judgment [289]. The Court denied the motion as to: the foreseeability of the alleged danger posed by the subject vehicle, the wrongful death claims of Plaintiffs C.R. and Matthew Riley, the loss of companionship or society claims of Plaintiffs C.R. and Matthew Riley, and Plaintiffs' negligence claims. However, the Court granted the motion as to: the MPLA claims of Plaintiffs C.R. and Matthew Riley; Plaintiff Matthew Riley's claim for lost wages; Plaintiffs' warning defect claims; Plaintiffs' claims regarding Defendants' alleged failure to retrofit or recall the subject vehicle; any manufacturing defect claim asserted by Plaintiffs; and any MPLA claim asserted by Plaintiffs premised upon the manufacturing, assembly, or installation of the restraint system. Finally, the Court ruled that Plaintiffs had not properly plead a bystander liability theory, and that no such claim was before the Court.

On the same day, the Court denied Ford's Motion to Exclude the Expert Testimony of Steven E. Meyer and for Summary Judgment [291]. The Court noted that Meyer's testimony was not wholly unsupported by empirical evidence. Therefore, the Court held that the testimony's weaknesses went toward its weight, rather than its admissibility. Next, the Court held that Plaintiffs had presented some evidence which would support a jury's finding that Meyer's proposed alternative restraint design would have to a reasonable probability prevented A.R.'s injury. Therefore, the Court denied Ford's motion for summary judgment.

## II. DISCUSSION

It is undisputed that Plaintiff A.R., at the time of the accident, was not secured in a child restraint seat or booster seat. Plaintiffs argue that any evidence to that effect should be excluded from the trial of this matter because 1) it is irrelevant to the issues of the case, and 2) the probative value of such evidence is outweighed by the unfair prejudice it would cause Plaintiffs.[4]

*A.     Relevance*

Plaintiffs first argue that evidence that A.R. was not secured in a child restraint seat or booster seat is irrelevant to the issues presented by this case. Plaintiffs asserted a few different arguments on this issue. The Court shall address them each in turn.

*1.     Mississippi Code Section 63-7-301(3)*

Mississippi Code Section 63-7-301 requires "[e]very person transporting a child under the age of four (4) years" in a motor vehicle to use a "child passenger restraint device." MISS. CODE ANN. § 63-7-301(1)(a). If the child is "at least four (4) years of age, but less than seven (7) years of

---

[4]After the pretrial conference, the parties submitted letter briefs to the Court on this motion. Those briefs are not part of the record, but the arguments presented in them do not materially differ from the arguments in the parties' briefs on the docket.

age and measures less than four (4) feet nine (9) inches in height or weighs less than sixty-five (65) pounds," one must use a "belt positioning booster seat system." MISS. CODE ANN. § 63-7-301(1)(b). However, "[f]ailure to provide and use a child passenger restraint device or system or a belt positioning booster seat system shall not be considered contributory or comparative negligence." MISS. CODE ANN. § 63-7-301(3). Therefore, Plaintiffs argue that their failure to use a booster seat is irrelevant because the jury may not consider it as evidence of comparative fault.

Defendants argue that Plaintiffs' failure to use a booster seat is relevant to the causation of A.R.'s injuries and the nature of the crash, citing *Estate of Hunter v. GMC*, 729 So. 2d 1264 (Miss. 1999). *Hunter*, like the present case, involved a horrific automobile accident. *Id.* at 1266. The passengers of a vehicle manufactured by GMC filed a product liability action, but the jury returned a verdict in favor of GMC. *Id.* On appeal, the plaintiffs argued that the trial court erred by admitting evidence that they "were not wearing their seatbelts at the time of the accident and in instructing the jury that seat belt non-usage constituted contributory negligence." *Id.* at 1267.

Mississippi Code provides that "[f]ailure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence." MISS. CODE ANN. § 63-2-3. However, the Mississippi Supreme Court noted that "the statute does not forbid the admission of evidence of seat belt non-usage outright." *Hunter*, 729 So. 2d at 1267. The defendant argued that the statute was an improper statutory rule of evidence, but the court observed that as long as the statute "is enforced as written and not given an overbroad application, then the statute is best considered a substantive statute rather than an improper evidentiary one." *Id.* at 1267-68. Accordingly, the Court concluded:

> [E]vidence of seat belt non-usage may constitute relevant evidence in some (but by no means all or even most) cases, so long as (1) the evidence has some probative

> value other than as evidence of negligence; (2) this probative value is not substantially outweighed by its prejudicial effect . . . and is not barred by some other rule of evidence and (3) appropriate limiting instructions are given to the jury, barring the consideration of the seat belt non-usage as evidence of negligence.

*Id.* at 1268. The court further noted that such evidence had been admitted by other courts in "crashworthiness cases." *Id.* (citing *DePaepe v. GMC*, 33 F.3d 737 (7th Cir. 1994)). Therefore, the court held that evidence of the plaintiffs' failure to uses their seat belts was "relevant evidence for the jury to consider in understanding the nature of the crash." *Id.*

The Mississippi Supreme Court has continued to allow, in certain circumstances, the admission of evidence that plaintiffs failed to use their seat belts. In *Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1093-94 (Miss. 2005), the Mississippi Supreme Court held that it would have been permissible for a trial court to admit evidence that the plaintiffs "did not regularly use their seat belts." The defendant wanted to present the evidence for purposes of showing that adequate warning of an alleged defect would not have prevented a plaintiff's injury because the plaintiffs would not have heeded the warning. *Id.* at 1094. The Mississippi Supreme Court held that evidence of seat belt non-usage was admissible for that purpose, provided it passed other tests of admissibility and was accompanied by a proper limiting instruction. *Id.*

In *Herring v. Poirrier*, 797 So. 2d 797, 805 (Miss. 2000), the Mississippi Supreme Court again held that Mississippi Code Section 63-2-3 "does not purport to bar the admission of seat belt non-usage in all cases, . . . but rather forbids such only from being considered as contributory or comparative negligence." In that case, the defendant had stipulated to his negligence in an automobile accident. *Id.* at 806. Therefore, the only issues for trial were whether the defendant's negligence caused the plaintiff's injuries and, if so, the extent of the injuries. *Id.* The defendant's counsel elicited testimony from the plaintiff that he was wearing his seat belt at the time of the

accident, and that, as a result, he remained in his seat throughout the accident. *Id.* at 805. On appeal, the plaintiff argued that the trial court erred by admitting the testimony. *Id.*

The Mississippi Supreme Court held that the trial court did not err in admitting the testimony. *Id.* at 806. The court noted *Hunter*'s holding – discussed above – and it noted that "the statute does not provide that the use of a seat belt may not be considered." *Id.* at 805-06. The testimony at issue was relevant to the cause and extent of the plaintiff's injuries, and, in any case, a jury could not use the information to conclude that the plaintiff was contributorily negligent insofar as he used his seat belt. *Id.* at 806.

Plaintiffs argue that *Hunter* is inapplicable to the present case because it addressed "non-use" of a seat belt, while Defendants concede that A.R. was wearing her seat belt. This is, at best, a misrepresentation of Defendants' position. Defendants argue – and their expert, Thomas McNish, testified – that A.R. removed the shoulder belt portion of her seat belt and placed it behind her back. Therefore, Defendants believe that the evidence shows A.R. was not wearing her seat belt *properly*. Admittedly, *Hunter* addressed a total failure to use a seat belt, rather than a failure to properly use one. However, the Court sees no reason to distinguish it on that basis alone. The parties agree that a child's removal of the shoulder strap decreases the effectiveness of the seat belt. They disagree as to whether A.R. removed her shoulder strap. Further, the statute at issue in *Hunter* is virtually identical to the statute at issue in the present case. There is no reason to believe that the Mississippi Supreme Court would treat non-use of a booster seat any differently than non-use of a seat belt.

*Hunter* is applicable to this case, and Mississippi Code Section 63-7-301(3) does not bar the admission of evidence that A.R. was not in a child restraint seat or booster seat at the time of the accident for the purposes Defendants have articulated if it is otherwise admissible and accompanied

by a limiting instruction.

### 2.  *Seat Belt or Booster Seat?*

Next, Plaintiffs argue that Defendants conceded that A.R. would not have suffered her injuries if she were properly belted. Therefore, Plaintiffs contend that her use or non-use of a booster seat is irrelevant because she would have suffered the same injuries if she had used a booster seat yet still removed her shoulder strap as Defendants argue she did. The pivotal issue, Plaintiff argues, is seat belt use, rather than booster seat use. Again, this is a misrepresentation of Defendants' position. While Defendants' expert, McNish, testified that A.R. would not have sustained the same injuries she did if she had been properly belted, he also testified that she would not have sustained the same injuries if she had been in a booster seat. These are not mutually exclusive opinions. Both issues –  the failure to use a booster seat and the alleged failure to use the shoulder strap – may conceivably have caused A.R.'s injury, along with the alleged design defect. Determining causation is a matter for the jury to consider. The Court is not permitted to simply disregard one alleged cause among several when there is evidence sufficient to create a jury question.

Further, Plaintiffs' own expert, Joseph Burton, testified that it was unlikely that A.R. would have been partially ejected and seriously injured or killed if she were properly belted. He also testified that a booster seat would have decreased the likelihood that she would suffer the same injuries. In his words: ". . . it would be dishonest for somebody to say that a booster seat may not improve her chances in this and other crashes, as well as getting a better outcome." Therefore, according to both parties' experts, the non-use of a booster seat is relative to the causation of A.R.'s injuries.

*3.     The Buckle Stalk*

Plaintiffs also argue that Ford's expert conceded that the buckle stalk may have broken even if A.R. had been in a booster seat. Therefore, Plaintiffs contend that the injury would have occurred anyway, due to the alleged design defect. One of Ford's experts, Jeffery Pearson, testified that he could not determine with any reasonable degree of engineering certainty whether the buckle stalk would or would not have bent or broken if A.R. had been in a booster seat. However, another of Ford's experts, McNish, testified that the use of a booster seat would have altered the angle of the force exerted on the buckle stalk. He stated that there would have been less lateral force than there was without a booster seat. Therefore, a fact issue exists as to whether a booster seat would have prevented the buckle stalk from moving.

Furthermore, Plaintiffs' argument on this point assumes that the movement of the buckle stalk caused A.R.'s injuries. It is not inconsistent for Defendants to concede that the buckle stalk would have moved despite the use of a booster seat while arguing that the failure to use a booster seat caused her injuries, as they dispute that the movement of the buckle stalk caused A.R.'s injuries. There are several alleged causes at play in this matter: the buckle stalk, the belt retractor, the deformed pillars, non-use of a booster seat, improper seat belt use, and a third party under the influence of opiates. The record contains evidence as to each of those alleged causes, and it is the jury's responsibility to evaluate the evidence at trial and decide which factors caused Plaintiffs' injuries and in what degree. The Court can not, at this stage in the proceedings, rule out an alleged cause that is supported by some evidence.[5]

---

[5] This observation does not constitute a ruling on any evidentiary matter beyond the scope of the present motion.


### B. *Unfair Prejudice*

Finally, Plaintiffs argue that evidence of Plaintiffs' failure to use a booster seat should be excluded under Rule 403. However, they have not cited any law in support of this position. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. The Court has "broad discretion to weigh the relevance, probative value, and prejudice of the evidence in determining its admissibility under Rule 403." *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006).

In the Court's opinion, any prejudice caused by the admission of the evidence 1) is not necessarily unfair, and 2) can be remedied by an appropriate limiting instruction. Further, admission of the evidence will not confuse the issues or mislead the jury, as the cause of A.R.'s injuries is an issue for the jury to decide and there is evidence in the record supporting Defendants' position that non-use of a booster seat caused her injuries. Therefore, the Court will not exclude the evidence pursuant to Rule 403. In the Court's experience, juries tend to be more adept at sifting through evidence than attorneys believe they are. Any unfair prejudice caused by admission of the booster seat evidence can be remedied by a limiting instruction, and the Court trusts the jury to follow the instructions given to it. *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) ("Jurors are presumed to follow their instructions . . . .").[6]

---

[6]Plaintiffs also argue that admission of the booster seat evidence will amount to "punishment of citizens of Mississippi for performing a legal act," or, alternatively, punishment of A.R. for her parents' failure to use a booster seat. The evidence will not be admitted for purposes of showing contributory or comparative negligence. It is being offered to show causation of A.R.'s injuries. The Mississippi Supreme Court ruled that evidence like this may be

### III. CONCLUSION

For the reasons stated above, the Court **denies** Plaintiffs' Motion In Limine [162] as to evidence that A.R. was not in a child restraint seat or booster seat at the time of the accident.

If any party intends to offer this evidence at trial, it must be accompanied by a limiting instruction. In order to avoid unnecessary delays during trial, the Court orders the parties to confer and attempt to agree on a proposed limiting instruction prior to the start of trial. If the parties can not agree on a limiting instruction, each party must submit one to the Court for review prior to the start of trial, and the Court will fashion one as it sees fit. Before any party introduces evidence regarding Plaintiffs' failure to use a booster seat or refers to such evidence, they shall provide the Court and the opposing party with prior notice outside the presence of the jury, so that the Court may prepare to give the limiting instruction prior to introduction of or referral to such evidence.

SO ORDERED AND ADJUDGED this 15th day of July, 2011.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE

---

admitted for certain purposes in an MPLA case. *Hunter*, 729 So. 2d at 1268. "In diversity cases, state law governs the type of evidence necessary to support the verdict." *Dietz v. Garske*, 406 F. App'x 863, 864 (5th Cir. 2010); *see also Wackman v. Rubsamen*, 602 F.3d 391, 400 (5th Cir. 2010); *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199-200 (5th Cir. 2006) (applying Texas law to determine the admissibility of seatbelt evidence despite Texas statute which provided that use or non-use of a seat belt was not admissible evidence in a civil trial). Therefore, the Court will follow the Mississippi Supreme Court's guidance.