**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MATTHEW RILEY, et al.**                                                                                    **PLAINTIFFS**

**v.**                                                                         **CIVIL ACTION NO. 2:09-CV-148-KS-MTP**

**FORD MOTOR COMPANY, et al.**                                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' motions for summary judgment on Plaintiffs' punitive damages claim [148, 156]. For the reasons stated below, the motions are granted.

### I. BACKGROUND

This is a wrongful death and product liability action stemming from an automobile accident on November 3, 2006. The Riley family was traveling east on Highway 98 in Marion County, Mississippi, in a 2002 Ford Explorer XLS. Plaintiff Matthew Riley was driving. Plaintiff Carmen Riley occupied the front passenger seat, while their children, Plaintiffs C.R. and A.R., sat in the back seat. All Plaintiffs were wearing seat belts.

Another vehicle attempted to pass Plaintiffs' Explorer and made contact with it. Plaintiffs' vehicle went off the road, rolling over several times in the process. All Plaintiffs suffered serious injuries. Carmen Riley and A.R. were partially ejected from the vehicle. Carmen Riley suffered serious and permanent injuries, while A.R. was killed.

In their First Amended Complaint, Plaintiffs advanced a variety of claims implicating both

1

the Mississippi Products Liability Act ("MPLA")[1] and Mississippi's wrongful death statute.[2] They alleged that the Explorer's restraint system failed as a result of design and manufacturing defects. They further alleged that its door latch system failed, and that its windows were not properly glazed. Finally, they alleged that Defendants failed to warn of the danger caused by the alleged defects. They included the following causes of action: strict liability, negligence, and failure to recall and/or retrofit. Finally, they seek a variety of damages, including punitive damages; medical expenses; lost earnings; and compensation for pain, suffering, and emotional distress.

In an order [267] entered June 23, 2011, the Court granted in part and denied in part Ford's Motion for Partial Summary Judgment [152]. The Court granted the motion as to: the MPLA claims and emotional damages claims of Plaintiffs C.R. and Matthew Riley; Matthew Riley's lost wages claims; all Plaintiffs' warning defect claims; all Plaintiffs' claims stemming from alleged defects in the door latch system and window glazing; and all Plaintiffs' claims stemming from Defendants' alleged failure to recall or retrofit the vehicle. However, the Court denied the motion as to: Matthew Riley and C.R.'s claims for loss of companionship and society; Matthew Riley and C.R.'s claims for damages attributable to the injuries and/or death of A.R. to which they were entitled as wrongful death beneficiaries; and all Plaintiffs' negligence claims. Finally, the Court held that Plaintiffs had not properly plead any bystander liability claim, and, therefore, no such claim was before the Court.[3]

The Court also granted in part and denied in part [268] Ford's Motion to Strike [244] the affidavit of Steven Meyer attached to Plaintiffs' response [231] to Ford's Motion to Exclude [150]

---

[1] MISS. CODE ANN. § 11-1-63.

[2] MISS. CODE ANN. § 11-7-13.

[3] The Court later denied [276] Plaintiffs' motion to file a Second Amended Complaint which included a bystander liability theory.

2

Meyer's testimony. The Court denied the motion as to: Meyer's testimony addressing belt spool-out; Meyer's testimony that belt spool-out generally occurs in rollover accidents; Meyer's testimony regarding other similar incidents of mounting bracket failure; Meyer's discussion of certain spit test data which allegedly displayed the effects of anchor deformation; Meyer's general observations regarding the strength of an aluminum rivet, including his assistant's "testing" the rivet by applying force by hand; and Meyer's discussion of belt geometry. The Court granted the motion as to: Meyer's testimony regarding other specific incidents of belt spool-out; Meyer's testimony regarding other specific incidents of retractor failure; Meyer's testimony regarding other similar incidents of B-pillar deformation, C-pillar deformation, and D-ring movement; any calculations, testing, or analysis regarding the strength of any aluminum rivet that was not timely disclosed to Defendants, including Meyer's discussion of tensile strength ratings; and Meyer's belt geometry diagrams.

On July 12, 2011, the Court granted in part and denied in part Key Safety's Motion for Summary Judgment [289]. The Court denied the motion as to: the foreseeability of the alleged danger posed by the subject vehicle, the wrongful death claims of Plaintiffs C.R. and Matthew Riley, the loss of companionship or society claims of Plaintiffs C.R. and Matthew Riley, and Plaintiffs' negligence claims. However, the Court granted the motion as to: the MPLA claims of Plaintiffs C.R. and Matthew Riley; Plaintiff Matthew Riley's claim for lost wages; Plaintiffs' warning defect claims; Plaintiffs' claims regarding Defendants' alleged failure to retrofit or recall the subject vehicle; any manufacturing defect claim asserted by Plaintiffs; and any MPLA claim asserted by Plaintiffs premised upon the manufacturing, assembly, or installation of the restraint system. Finally, the Court ruled that Plaintiffs had not properly plead a bystander liability theory, and that no such claim was before the Court.

3

On the same day, the Court denied Ford's Motion to Exclude the Expert Testimony of Steven E. Meyer and for Summary Judgment [291]. The Court noted that Meyer's testimony was not wholly unsupported by empirical evidence. Therefore, the Court held that the testimony's weaknesses went toward its weight, rather than its admissibility. Next, the Court held that Plaintiffs had presented some evidence which would support a jury's finding that Meyer's proposed alternative restraint design would have to a reasonable probability prevented A.R.'s injury. Therefore, the Court denied Ford's motion for summary judgment.

On July 15, 2011, the Court denied Plaintiffs' motion in limine [162] as to evidence that A.R. was not in a child restraint seat or booster seat at the time of the accident. The Court noted that the evidence was not admissible as evidence of Plaintiffs' comparative or contributory negligence. However, such evidence is admissible to show causation or to illustrate the nature of the accident, as long as it is otherwise admissible and accompanied by a limiting instruction. The Court ordered the parties to confer and attempt to agree on a proposed limiting instruction prior to the start of trial.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could

4

affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

The Court now considers Defendants' motions for summary judgment as to Plaintiffs' punitive damages claim. The Court will consider Defendants' motions jointly. Each Defendant presented a similar argument that Plaintiffs could not provide clear and convincing evidence that it committed actual fraud or acted with actual malice, gross negligence, or a willful, wanton, or reckless disregard for the safety of others. As the Court finds merit in this argument, it will not address the other arguments advanced by Defendants.

In their responses, Plaintiffs only addressed Defendants' actions and knowledge with respect to the restraint system employed in the rear passenger-side seating position – A.R.'s seat. Therefore, the Court assumes that Plaintiffs concede that if they can recover punitive damages in this case, it will only be through the claims stemming from A.R.'s injuries and death.

In Mississippi, "[p]unitive damages may not be awarded if the claimant does not prove by

clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). "The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are appropriate." *Wise v. Valley Bank*, 861 So. 2d 1029, 1034 (Miss. 2003). Punitive damages are generally allowed only "where the facts are highly unusual and the cases extreme." *Id.* at 1035. "[S]imple negligence is not of itself evidence sufficient to support punitive damages, but accompanying facts and circumstances may be used to show that that portion of defendant's conduct which constituted proximate cause of the accident was willful and wanton or grossly negligent." *Choctaw Maid Farms v. Hailey*, 822 So. 2d 911, 924 (Miss. 2002). Therefore, in a product liability case such as this one, if there is a genuine dispute as to whether the design at issue was actually defective, punitive damages may not be merited. *See Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995).

     Plaintiffs' briefing focuses heavily on Defendants' knowledge that the buckle stalk utilized in the rear passenger-side seating position would bend under sufficient force. The buckle stalk at issue was attached to a similar metal stalk for the center seating position by a single aluminum rivet. Both buckle stalks were attached to the floor pan with two metal bolts. During the accident, the aluminum rivet connecting the two metal stalks broke, and A.R.'s buckle stalk bent in an outboard direction. As explained in the Court's earlier opinion [291], Plaintiffs' expert believes the buckle stalk was defectively designed, as it could bend in an outboard direction and create sufficient slack in the seat belt to permit an occupant to partially exit the vehicle through the window. Plaintiffs' expert proposes an alternative design which he believes would allow less outboard movement and,

therefore, less seat belt slack.

Jayagopal Appukutty, one of Ford's engineers, testified that he might have seen the rivet which connects the two buckle stalks come out during Ford's testing, but that he has no specific memory to that effect. However, he testified that Ford would not have recorded that the rivet came loose, in any case, as it was not intended to be a safety feature or to strengthen the structure of the buckle assembly. Rather, he testified that the rivet's sole purpose was to hold the two buckle stalks in place to facilitate installation. Accordingly, Ford conducted no tests to determine how much force it would take to break the rivet. Appukutty further testified that "if there is a load," the buckle stalks "will move in the direction of that load." When directly asked whether the buckle assembly was "designed that way," he answered affirmatively.

William Ballard, Ford's corporate representative, testified that Ford had not conducted testing to determine how much pressure it would take to bend the buckle stalk, but that it was foreseeable to Ford that the buckle stalk would bend if sufficient force were applied to it. He echoed Appukutty's testimony that the rivet which held the buckle stalks together was installed to facilitate installation, rather than as a safety feature. Therefore, Ford recognized that the two straps could separate if sufficient force were applied to them. According to Ballard, Ford did not conduct any testing in which it applied lateral force to the buckle stalks, but he testified that if the buckle stalk had bent or moved during the seat belt assembly anchorage testing, Ford might have documented it with photographs. Ballard further testified that Ford conducted sled testing in which the buckle stalks separated from one another. Finally, he testified that Ford conducted review sessions in which it viewed testing videos with its component suppliers. He stated that Key Safety personnel were probably present at such film reviews, but he could not certainly recall.

In summary, a Ford engineer testified that Ford knew that the buckle stalk for the rear passenger-side seat of the subject vehicle would bend if force were applied to it. Ford's corporate representative testified that Ford did not conduct any testing to determine how much force it would take to bend the buckle stalk, and that Ford recognized that the stalk would move if sufficient force were applied to it. He further testified that Ford observed the buckle stalk move or bend during sled testing, and that Key Safety personnel were probably present at film reviews of such tests. Therefore, the record contains evidence that Ford knew of the buckle stalk's propensity to bend outboard when sufficient pressure was applied. *See Cooper Tire & Rubber Co. v. Tuckier*, 826 So. 2d 679, 690 (Miss. 2002) (where plaintiff presented evidence that the defendant knew bad stock was used in manufacturing the product, it was proper for the jury to consider punitive damages).

The evidence of Key Safety's knowledge of the buckle stalk's propensity to bend is substantially weaker. Plaintiffs rely heavily on the inference that Key Safety knew what Ford knew. However, Plaintiffs have offered little evidence to support that inference. The best they offered was the testimony from Ford's corporate representative that Key Safety personnel were probably present at film reviews of testing which showed the buckle stalk bend. Regardless, the Court shall assume, for purposes of addressing this motion, that both Key Safety and Ford knew that the buckle stalk would bend if sufficient force were applied to it.[4]

---

[4]The Court has already held that there is sufficient evidence to create a question of fact as to whether the alleged danger posed by the buckle stalk assembly was reasonably foreseeable to Key Safety [289]. However, that is a different inquiry than whether Key Safety had sufficient knowledge of the alleged defect to support an award of punitive damages. Plaintiffs' must prove their design defect claim by a preponderance of the evidence. MISS. CODE ANN. § 11-1-63(a). However, they must prove their punitive damages claim by clear and convincing evidence. MISS. CODE ANN. § 11-1-65(1)(a). Furthermore, a defendant may be liable under a design defect claim for negligent behavior, *Estate of Hunter v. GMC*, 729 So. 2d 1264, 1277-78 (Miss. 1999), whereas a defendant may not be liable for punitive damages unless its behavior evinces a willful,

Both Defendants argue that this case presents nothing more than a classic "battle of the experts" scenario. They contend that the evidence in this case demonstrates a good faith dispute as to whether the buckle stalk was defectively designed. The Court agrees with Defendants. While the record contains evidence that Defendants knew of the buckle stalk's propensity to bend when subjected to sufficient force, the more pertinent question – at least with respect to Plaintiffs' punitive damages claim – is whether Plaintiffs have presented clear and convincing evidence that Defendants knew that this condition constituted a design defect. Simply put: there is room for disagreement as to whether the buckle stalk's ability to bend outboard is actually a design defect. Plaintiffs have presented sufficient evidence to create a fact question as to whether there was a design defect, and a jury may agree with them. However, the evidence before the Court is not sufficient to meet Plaintiffs' burden under Mississippi's punitive damages statute.

Under Mississippi law, a defendant's actions must surpass mere negligence or oversight before the issue of punitive damages may be presented to the jury. *Choctaw Maid Farms*, 822 So. 2d at 924; *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1187 (Miss. 1990) (sufficient evidence existed for judge to conclude that defendant's "egregious" actions "may have reached a heightened level of an independent tort"). Punitive damages are reserved for egregious conduct. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008). Accordingly, they "are disfavored under Mississippi law and are reserved for extreme cases and even then should be narrowly applied." *Watson v. Johnson Mobile Homes*, 284 F.3d 568, 571 (5th Cir. 2002). For

---

wanton or reckless disregard for the safety of others, or actual fraud. MISS. CODE ANN. § 11-1-65(1)(a). Therefore, a finding that a fact question exists as to whether the danger was reasonably foreseeable is a far cry from a finding that a defendant had sufficient prior knowledge to support an award of punitive damages.

example, in an insurance coverage dispute, an insurance company will not be liable for punitive damages unless it had no arguable reason to deny a policyholder's claim and its breach of the policy resulted from "an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *Essinger*, 529 F.3d at 271. Likewise, in products liability actions, a manufacturer may not be liable for punitive damages if there is a genuine dispute as to whether the design at issue is actually defective. *See Satcher*, 52 F.3d at 1317; *Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107, 1113 (Miss. 2003).

Defendants cited to two cases which provide apt comparisons to this one. First, in *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1313 (5th Cir. 1995), the plaintiff claimed that a motorcycle was defectively designed because it did not have leg guards. He received a $3,000,000.00 judgment at trial which included $2,000,000.00 of punitive damages. *Id.* On appeal, the manufacturer argued that the evidence at trial did not support an award of punitive damages. *Id.* at 1315. The Fifth Circuit agreed, noting that the evidence at trial demonstrated:

> . . . that (1) there is a genuine dispute in the scientific community as to whether leg guards do more harm than good, (2) no government or agency thereof has ever required them, (3) no independent testing or professional organization has ever recommended them, (4) one of the original researchers on the problem who worked with two of plaintiff's experts disagrees with them, (5) the industry as a whole categorically rejects the need for leg guards, and (6) Honda's own testing on their uses reached no definitive conclusions.

*Id.* at 1317. Accordingly, the Fifth Circuit held that "no reasonable jury could conclude under Mississippi law that this is an extreme case meriting punitive damages, or that Honda's conduct rose to the level of malice, ruthless disregard or gross negligence required for the imposition of such damages." *Id.* (punctuation omitted). Therefore, the court vacated the punitive damages award. *Id.*

In *Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107, 1109-10 (Miss. 2003), a plaintiff whose

father was killed when two fuel trucks exploded claimed that the trucks were defectively designed because their engines did not have "automatic shutoff device[s]" and because their air intake systems did not have "safety device[s] which would close . . . off if the engine exceeded a certain speed." *Id.* at 1110. The Mississippi Supreme Court noted that the "case involved a battle of experts regarding whether either or both engines in question were defectively designed . . . ." *Id.* at 1112. There was sufficient evidence to present the design defect issue to a jury. *Id.* However, the Supreme Court held that the trial court did not err in refusing to submit a punitive damages instruction to the jury, as "there was no clear and convincing evidence of malice or gross negligence." *Id.* at 1113.

The evidence in the present case reflects a genuine dispute as to whether A.R.'s seat belt assembly was defective. Plaintiffs' expert contends that the design was defective, while Ford's expert contends that it was not. It is undisputed that Ford complied with all applicable government safety regulations. Finally, the only evidence to support Plaintiffs' claim for punitive damages is the testimony that Ford knew the buckle stalk would bend if enough pressure was applied to it. That is not clear and convincing evidence that Defendants acted willfully, wantonly, fraudulently, or with reckless disregard for the safety of others. Indeed, the same witnesses who testified that Ford knew the buckle stalk would bend under enough pressure noted that *any* component of a vehicle would break or fail under sufficient pressure. At best, the evidence demonstrates that Defendants failed to recognize the potential harm to an occupant in the event that the buckle stalk bent in an outboard direction, and that is not the sort of extreme behavior which merits punitive damages.[5]

---

[5]*Cooper Tire & Rubber Co. v. Tuckier*, 826 So. 2d 679, 690 (Miss. 2002), is distinguishable from the present case. There, the plaintiff presented evidence during trial that the defendant knowingly and intentionally used "bad stock" in manufacturing tires. *Id.* at 683. Two of the defendant's long-time employees testified as to their personal knowledge that the defendant knowingly and intentionally used bad stock in its tires. *Id.* at 690. In the present case,

11

## IV. CONCLUSION

For the reasons stated above, the Court **grants** Ford's Motion for Summary Judgment on Plaintiffs' Punitive Damages Claim [148] and Key Safety's Motion for Summary Judgment on Plaintiffs' Punitive Damages Claim [156].

SO ORDERED AND ADJUDGED this 19th day of July, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

there is no evidence that Defendants knowingly and intentionally created a design defect. At best, the testimony reflects a negligent failure to recognize the potential harm to an occupant in the event the buckle stalk bent outward. Further, *Tuckier* involved a manufacturing defect claim. *Id.* at 682-83. *Tackett* and *Satcher*, on the other hand, involved design defect claims, like the present case. *Tackett*, 841 So. 2d at 1110; *Satcher*, 52 F.3d at 1313. Therefore, the Court believes that they are more applicable.