**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MATTHEW RILEY, et al.**                                                              **PLAINTIFFS**

**v.**                              **CIVIL ACTION NO. 2:09-CV-148-KS-MTP**

**FORD MOTOR COMPANY, et al.**                                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Summary Judgment [175] as to certain affirmative defenses asserted by Defendants. For the reasons stated below, the motion is **granted in part and denied in part**.

**I. BACKGROUND**

This is a wrongful death and product liability action stemming from an automobile accident on November 3, 2006. The Riley family was traveling east on Highway 98 in Marion County, Mississippi, in a 2002 Ford Explorer XLS. Plaintiff Matthew Riley was driving. Plaintiff Carmen Riley occupied the front passenger seat, while their children, Plaintiffs C.R. and A.R., sat in the back seat. All Plaintiffs were wearing seat belts.

Another vehicle attempted to pass Plaintiffs' Explorer and made contact with it. Plaintiffs' vehicle went off the road, rolling over several times in the process. All Plaintiffs suffered serious injuries. Carmen Riley and A.R. were partially ejected from the vehicle. Carmen Riley suffered serious and permanent injuries, while A.R. was killed.

In their First Amended Complaint, Plaintiffs advanced a variety of claims implicating both

1

the Mississippi Products Liability Act ("MPLA")[1] and Mississippi's wrongful death statute.[2] They alleged that the Explorer's restraint system failed as a result of design and manufacturing defects. They further alleged that its door latch system failed, and that its windows were not properly glazed. Finally, they alleged that Defendants failed to warn of the danger caused by the alleged defects. They included the following causes of action: strict liability, negligence, and failure to recall and/or retrofit. Finally, they seek a variety of damages, including punitive damages; medical expenses; lost earnings; and compensation for pain, suffering, and emotional distress.

In an order [267] entered June 23, 2011, the Court granted in part and denied in part Ford's Motion for Partial Summary Judgment [152]. The Court granted the motion as to: the MPLA claims and emotional damages claims of Plaintiffs C.R. and Matthew Riley; Matthew Riley's lost wages claims; all Plaintiffs' warning defect claims; all Plaintiffs' claims stemming from alleged defects in the door latch system and window glazing; and all Plaintiffs' claims stemming from Defendants' alleged failure to recall or retrofit the vehicle. However, the Court denied the motion as to: Matthew Riley and C.R.'s claims for loss of companionship and society; Matthew Riley and C.R.'s claims for damages attributable to the injuries and/or death of A.R. to which they were entitled as wrongful death beneficiaries; and all Plaintiffs' negligence claims. Finally, the Court held that Plaintiffs had not properly plead any bystander liability claim, and, therefore, no such claim was before the Court.[3]

The Court also granted in part and denied in part [268] Ford's Motion to Strike [244] the affidavit of Steven Meyer attached to Plaintiffs' response [231] to Ford's Motion to Exclude [150]

---

[1] MISS. CODE ANN. § 11-1-63.

[2] MISS. CODE ANN. § 11-7-13.

[3] The Court later denied [276] Plaintiffs' motion to file a Second Amended Complaint which included a bystander liability theory.

Meyer's testimony. The Court denied the motion as to: Meyer's testimony addressing belt spool-out; Meyer's testimony that belt spool-out generally occurs in rollover accidents; Meyer's testimony regarding other similar incidents of mounting bracket failure; Meyer's discussion of certain spit test data which allegedly displayed the effects of anchor deformation; Meyer's general observations regarding the strength of an aluminum rivet, including his assistant's "testing" the rivet by applying force by hand; and Meyer's discussion of belt geometry. The Court granted the motion as to: Meyer's testimony regarding other specific incidents of belt spool-out; Meyer's testimony regarding other specific incidents of retractor failure; Meyer's testimony regarding other similar incidents of B-pillar deformation, C-pillar deformation, and D-ring movement; any calculations, testing, or analysis regarding the strength of any aluminum rivet that was not timely disclosed to Defendants, including Meyer's discussion of tensile strength ratings; and Meyer's belt geometry diagrams.

On July 12, 2011, the Court granted in part and denied in part Key Safety's Motion for Summary Judgment [289]. The Court denied the motion as to: the foreseeability of the alleged danger posed by the subject vehicle, the wrongful death claims of Plaintiffs C.R. and Matthew Riley, the loss of companionship or society claims of Plaintiffs C.R. and Matthew Riley, and Plaintiffs' negligence claims. However, the Court granted the motion as to: the MPLA claims of Plaintiffs C.R. and Matthew Riley; Plaintiff Matthew Riley's claim for lost wages; Plaintiffs' warning defect claims; Plaintiffs' claims regarding Defendants' alleged failure to retrofit or recall the subject vehicle; any manufacturing defect claim asserted by Plaintiffs; and any MPLA claim asserted by Plaintiffs premised upon the manufacturing, assembly, or installation of the restraint system. Finally, the Court ruled that Plaintiffs had not properly plead a bystander liability theory, and that no such claim was before the Court.

On the same day, the Court denied Ford's Motion to Exclude the Expert Testimony of Steven E. Meyer and for Summary Judgment [291]. The Court noted that Meyer's testimony was not wholly unsupported by empirical evidence. Therefore, the Court held that the testimony's weaknesses went toward its weight, rather than its admissibility. Next, the Court held that Plaintiffs had presented some evidence which would support a jury's finding that Meyer's proposed alternative restraint design would have to a reasonable probability prevented A.R.'s injury. Therefore, the Court denied Ford's motion for summary judgment.

On July 15, 2011, the Court denied Plaintiffs' motion in limine [162] as to evidence that A.R. was not in a child restraint seat or booster seat at the time of the accident. The Court noted that the evidence was not admissible as evidence of Plaintiffs' comparative or contributory negligence. However, such evidence is admissible to show causation or to illustrate the nature of the accident, as long as it is otherwise admissible and accompanied by a limiting instruction. The Court ordered the parties to confer and attempt to agree on a proposed limiting instruction prior to the start of trial.

On July 19, 2011, the Court granted Defendants' motions for summary judgment as to Plaintiffs' punitive damages claim. The Court held that Plaintiffs had failed to provide clear and convincing evidence that Defendants acted willfully, wantonly, fraudulently, or with reckless disregard for the safety of others. At best, Plaintiffs' evidence demonstrated mere negligence, rather than the sort of egregious conduct which merits punitive damages.

On July 25, 2011, the Court denied Plaintiffs' Motion to Exclude testimony by Key Safety's expert witnesses. The Court held that Plaintiffs had failed to show that they would be prejudiced by allowing the testimony.

On July 26, 2011, the Court denied Plaintiffs' Motion to Strike the Defendants' proposed

4

jury instructions. The Court also granted in part and denied in part Plaintiffs' Motion to Exclude certain testimony by Master Sergeant Ronald Rayburn. The Court denied Plaintiffs' motion as to Rayburn's lay opinion regarding the cause of the accident from which this case stems. However, the Court granted the motion as to Rayburn's lay opinions regarding the cause of Plaintiffs' injuries and the performance of the seat belts in the subject vehicle. The Court held that Rayburn could testify as to his personal observations, but that if Defendants wished to proceed beyond that – into the realm of opinions – they would have to make a proffer and demonstrate that the testimony meets the requirements of Rule 701.

On the same day, the Court granted in part and denied in part Defendants' motion to strike the errata sheet of James Koerber. The Court held that the first two entries on Koerber's errata sheet should be allowed, as Defendants' counsel had consented to Koerber providing the information in question via the errata sheet. However, the Court held that the remaining entries on the errata sheet should not be allowed, as Koerber had failed to provide a sufficient reason for them, they were plainly attempts to bolster his testimony in response to Defendants' motion to exclude, and there was insufficient time to allow any remedial measures.

The Court also denied Defendants' motion to exclude Koerber's testimony. Ford argued that Koerber utilized the wrong data in determining the personal consumption factor to be applied to A.R.'s potential lifetime wages. The Court noted that Plaintiffs had offered evidence which arguably supported Koerber's use of the data in question, and that Defendants had failed to rebut that evidence. Further, the Court held that the weaknesses in Koerber's testimony related to the bases and sources of his opinion, rather than his methodology. Therefore, the Court held that they were best remedied by cross-examination at trial, rather than wholesale exclusion of the testimony.

Accordingly, the Court denied Defendants' motion to exclude Koerber's testimony.

Finally, the Court denied Plaintiffs' motion to exclude the testimony of Jeffery Pearson and Thomas McNish. Plaintiff argued that neither expert was competent to offer expert engineering testimony as neither is licensed or certified by the state of Mississippi. The Court noted that the Fifth Circuit had rejected the argument that state law determines whether a proposed expert's opinion is sufficiently reliable and supported to constitute competent evidence. The Court also noted that the Mississippi regulations in question did not apply to the present case, as they would unreasonably burden this Court's administration of its own rules regarding the admissibility of expert testimony.

## II. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists,

"the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### A.     *Comparative Negligence*

Mississippi tort law employs a "pure comparative negligence system." *Canadian Nat'l/Ill. Cent. R.R. v. Hall*, 953 So. 2d 1084, 1099 (Miss. 2007). "In all actions . . . for personal injuries, or where such injuries have resulted in death, . . . the fact that the person injured . . . may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured . . . ." MISS. CODE ANN. § 11-7-15.

Plaintiffs' motion is broad, seeking summary judgment on Defendants' comparative negligence defense regardless of the actions or inactions upon which it is premised. However, they specifically addressed Plaintiff Matthew Riley's operation of the vehicle, Plaintiffs' failure to use a booster seat or other child safety restraint device, and Plaintiffs' alleged failure to ensure that A.R. properly used the shoulder strap of her seat belt. In response, Defendants only addressed Plaintiffs' arguments concerning A.R.'s seat belt and Plaintiffs' failure to use a booster seat. Therefore, Defendants failed to present any evidence to support a comparative negligence defense to any of Plaintiffs' other actions/inactions. Accordingly, Plaintiffs' motion for summary judgment is granted as to any other applications of a comparative negligence defense – including Matthew Riley's operation of the vehicle.

As for Plaintiffs' failure to utilize a booster seat or other child safety restraint device, the Court has already addressed that matter in its July 15, 2011, order [293] denying Plaintiffs' motion in limine. Under Mississippi law, "[f]ailure to provide and use a child passenger restraint device or system or a belt positioning booster seat system shall not be considered contributory or comparative negligence." MISS. CODE ANN. § 63-7-301(3). Therefore, Plaintiffs' motion for summary judgment is granted insofar as to any comparative negligence defense premised upon their failure to use a booster seat or other child safety device. However, evidence to that effect may be admitted for purposes other than showing Plaintiffs' comparative negligence if it is otherwise admissible and accompanied by a limiting instruction. *Cf. Estate of Hunter v. GMC*, 729 So. 2d 1264, 1268 (Miss. 1999).

Mississippi law further provides that "[f]ailure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence . . . ." MISS. CODE ANN. § 63-2-3. Therefore, regardless of whether a factual dispute exists concerning the position of A.R.'s shoulder belt at the time of the accident, Plaintiffs' alleged failure to ensure that the shoulder strap was properly positioned can not be considered as comparative negligence. Accordingly, Plaintiffs' motion for summary judgment is granted in that respect. However, evidence related to the position of A.R.'s shoulder strap may be admitted for purposes other than showing Plaintiffs' comparative negligence if it is otherwise admissible and accompanied by a limiting instruction. *Estate of Hunter*, 729 So. 2d at 1268.

**B.**     ***Assumption of the Risk***

In its answer [17] to Plaintiffs' first amended complaint, Ford generally asserted that "Plaintiffs' claims are barred by assumption of the risk . . . ." Key Safety asserted that Plaintiffs

8

"knowingly and voluntarily assumed the risk of use of the motor vehicle and/or knowingly and voluntarily assumed the risk of using the occupant restraint assemblies in question." They also asserted that Plaintiffs assumed the risk of using damaged occupant restraint systems, not using the occupant restraint systems, and not heeding the instructions provided with the vehicle. Neither Ford nor Key Safety provided any factual support for these defenses.[4]

In its briefing, Ford argued that Plaintiffs "assumed the risk of injury by failing to ensure that A.R. was properly restrained with the lap and shoulder belt of the vehicle's restraint system." Ford contends that a comparative negligence instruction should be given to the jury on this issue. Key Safety joined in Ford's response to Plaintiffs' motion for summary judgment and did not file its own response. Therefore, the Court assumes that Key Safety has abandoned the assumption of risk defenses it pleaded, except for the one premised upon Plaintiffs' alleged failure to properly use the restraint systems.

"The defense of assumption of the risk has been abolished in Mississippi and subsumed in the comparative fault doctrine." *Lloyd G. Oliphant & Sons Paint Co. v. Logan*, 12 So. 3d 614, 620 (Miss. 2009); *see also Farmer v. B & G Food Enters.*, 818 So. 2d 1154, 1157 (Mississippi has abandoned the doctrine of assumption of risk); MISS. CODE ANN. § 11-7-15 (statute establishing Mississippi's "pure" comparative fault system of liability). Accordingly, "[a]ny action on the part of the plaintiff which might be characterized as an assumption of the risk should be considered by

---

[4]The Court will not address the question of whether these affirmative defenses were properly pleaded, beyond noting that "[t]he pleading of affirmative defenses is governed by the same liberal standards as those for a complaint," *Lebouef v. Island Operating Co.*, 342 F. App'x 983, 984-85 (5th Cir. 2009). However, the Court is certain that Defendants would file a 12(b)(6) motion post-haste if faced with a complaint that contained a cause of action without any factual support.

9

the jury in the context of comparative negligence." *Logan*, 12 So. 3d at 620-21. "A jury is also free to conclude that a plaintiff's action in voluntarily encountering a known risk was the sole proximate cause of his injuries and, thus, acts as a complete bar to recovery." *Id.*

However, while Mississippi has embraced a "pure" comparative negligence model of liability, the MPLA nonetheless contains a codified a version of the assumption of the risk doctrine:

> In any action alleging that a product is defective pursuant to paragraph (a) of this section, the manufacturer or seller shall not be liable if the claimant (i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition.

MISS. CODE ANN. § 11-1-63(d). Further complicating matters, Mississippi's seat belt statute forbids the use of evidence that a party failed to use a seat belt as comparative or contributory negligence. MISS. CODE ANN. § 63-2-3.

This creates a conundrum. In summary, Mississippi's Supreme Court views assumption of risk as a form of contributory negligence, subsumed by the state's embrace of a "pure" comparative negligence system. *See Logan*, 12 So. 3d at 620. By statute, failure to use a seat belt shall not be considered comparative or contributory negligence. MISS. CODE ANN. § 63-2-3. However, a form of assumption of risk still exists in the MPLA. MISS. CODE ANN. § 11-1-63(d). Further, the MPLA's assumption of risk provision appears to impose a complete bar to a plaintiff's recovery, as opposed to the proportional recovery contemplated by the comparative negligence statute. *Compare* MISS. CODE ANN. § 11-1-63(d), *with* MISS. CODE ANN. § 11-7-15.

The question before the Court, then, is which specific codification controls – the MPLA's assumption of the risk provision, or the seat belt statute's bar upon offering evidence of seat belt non-use for purposes of showing contributory or comparative negligence? Mississippi law provides

no direct answer to this question, and the Court must make an *Erie* guess. *Plunkett v. State Farm Mut. Auto. Ins. Co.*, 347 F. App'x 994, 996 (5th Cir. 2009). The assumption of risk provision in the MPLA is nothing more than a codified version of contributory negligence. In this case, the seat belt statute specifically bars the use of evidence that a party failed to use their seat belt as contributory negligence. The Court will follow the seat belt statute, as it specifically addresses the issue in this case, while the MPLA's assumption of risk provision is more general.

"Failure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence" under Mississippi law. MISS. CODE ANN. § 63-2-3. Therefore, as Defendants' assumption of risk defense appears to be wholly premised upon Plaintiffs' alleged failure to properly use A.R.'s seat belt, Plaintiffs' motion for summary judgment as to assumption of risk is granted. However, evidence related to the position of A.R.'s shoulder strap may be admitted for purposes other than showing Plaintiffs' assumption of the risk if it is otherwise admissible and accompanied by a limiting instruction. *Estate of Hunter*, 729 So. 2d at 1268.

C. ***Product Misuse, Abnormal Use, and Product Modification***

According to Ford's briefing – which Key Safety joined – Defendants' affirmative defenses related to Plaintiffs' alleged misuse of the vehicle, abnormal use of the vehicle, or modification of the vehicle stem from Plaintiffs' alleged failure to ensure that A.R. was properly belted. Further, the only evidence Defendants presented related to the seat belt issue. "Failure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence" under Mississippi law. MISS. CODE ANN. § 63-2-3. Therefore, Plaintiffs' motion for summary judgment as to these affirmative defenses is granted. However, evidence related to the position of A.R.'s shoulder strap may be admitted for purposes other than showing Plaintiffs' comparative

11

negligence if it is otherwise admissible and accompanied by a limiting instruction. *Estate of Hunter*, 729 So. 2d at 1268.

### D.     *Mississippi Code Section 11-1-60*

In its answer, Key Safety claimed the "protections and benefits of all caps and limitations, including but not limited to Miss. Code Ann. § 11-1-60." Plaintiff argues that Mississippi Code Section 11-1-60 only applies to medical malpractice claims. In its response, Ford argued that Section 11-1-60(2)(b) applies to "any civil action."

Mississippi Code Section 11-1-60(2)(a) provides that "[i]n any cause of action . . . for injury based on malpractice or breach of standard of care against a provider of health care . . . , in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than Five Hundred Thousand Dollars ($500,000.00) for noneconomic damages." MISS. CODE ANN. § 11-1-60(2)(a). However, the statute further provides that "[i]n any civil action . . . other than those actions described in paragraph (a) of this subsection, in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than One Million Dollars ($1,000,000.00) for noneconomic damages." MISS. CODE ANN. § 11-1-60(2)(b). Accordingly, Plaintiffs' motion for summary judgment is denied as to the application of Mississippi Code Section 11-1-60(2)(b).

### E.     *Preemption*

Defendants concede that Plaintiffs' claims are not preempted by federal law. Therefore, Plaintiffs' motion for summary judgment as to this affirmative defense is granted.

### III. CONCLUSION

For the reasons stated above, the Court **grants in part and denies in part** Plaintiffs' Motion for Summary Judgment [175] as to certain affirmative defenses asserted by Defendants. The motion

is granted as to Defendants' comparative and contributory negligence defense; assumption of the risk defense; product misuse, abnormal use, or modification defense; and preemption defense. The motion is denied as to the application of Mississippi Code Section 11-1-60(2)(b).

Nothing in this opinion shall be construed as barring the admission of evidence regarding the use or non-use of A.R.'s seat belt. Such evidence is admissible for purposes other than showing Plaintiffs' comparative negligence if it is accompanied by a limiting instruction.

SO ORDERED AND ADJUDGED this 27th day of July, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE